UNITED STATES DISTRICT COURT FOR THE DISTRICT OF
MASSACHUSETTS

| | |
|---|---|
| MARSHALL AND EVELYN THOMAS, <br> Plaintiffs, <br><br> v. <br><br> J.P. MORGAN CHASE BANK, N.A. <br> SELECT PORTFOLIO SERVICING, INC. <br> & DEUTSCHE BANK NATIONAL <br> TRUST CO., AS TRUSTEE FOR THE <br> WAMU MORTGAGE PASS-THROUGH <br> SERIES 2005-AR16 <br> Defendants | Docket No.:_____ |

## **VERIFIED COMPLAINT**

### INTRODUCTION

This is a complaint by two homeowners, husband and wife, against a national bank, a loan servicer, and Deutsche Bank, National Trust Co., no stranger to mortgage foreclosure litigation related to a loan that was either canceled by J.P. Morgan Chase Bank, when it held the loan, was not canceled by J.P. Morgan Chase Bank (although a 1099-C cancellation of debt form was sent to the borrowers), and about which Select Portfolio Servicing, Inc. refused to communicate with the Thomases representatives. Because of the confusion and hardship caused by its predecessors who, in information and belief, were acting on behalf of Deutsche Bank – Deutsche Bank should be enjoined from foreclosing on the Plaintiffs' residence.

### PARTIES

(1).   Marshall Thomas (herein "Marshall") is a natural person residing at 68 Salman St., W. Roxbury, Massachusetts.

(2).   Evelyn Thomas (herein "Evelyn") is a natural person residing at 68 Salman St., W. Roxbury, Massachusetts.

1

(3).    The Defendant J.P. Morgan Chase Bank, N.A. (herein "Chase"), is a Bank Holding Company with its principal offices located at 270 Park Ave., 38th Floor New York, NY 10017. The Defendant is a publicly traded entity.

(4).    Select Portfolio Servicing, Inc. (herein "SPS"), is a Utah Corporation with a principal place of business located at 3217 S. Decker Lake Dr., Salt Lake City, Utah.

(5).    Upon information and belief, Deutsche Bank National Trust Company (herein, "DBNT") is a national association organized under the laws of the United States, with a primary address of 1761 East St., Andrew Place, Santa Ana, CA 92705-4934.

## JURIDICTION

(6).    This Court has jurisdiction pursuant to 28 U.S.C. § 1332, because none of the Defendants are citizens of the Commonwealth of Massachusetts, for diversity purposes, and because the Thomases both are.

(7).    The amount in controversy exceeds $75,000.

## FACTS

(8).    The Plaintiffs own a property located at 28 Green Street, Canton, Norfolk County, Massachusetts (herein the "Property").

(9).    On or around October 4th, 2005, the Thomases gave a first lien mortgage in the amount of $1,500,000 to Washington Mutual, a true and accurate copy of which is attached hereto as Exhibit A (herein the "mortgage").

(10).   On or around July 3rd, 2009, J.P. Morgan, Chase Bank, N.A. as successor in interest from the FDIC, as receiver for Washington Mutual assigned the mortgage to DBNT, see Exhibit B.

(11).   On or around September 25th, 2012, DBNT re-assigned the 2005 Mortgage, together with the note it secured (herein, jointly, the "loan") to Chase, a true and accurate copy is attached hereto as Exhibit C

(12).   On or around September 25th, 2012, Chase executed a loan modification agreement (herein the "Modification") with the Thomases, and their son, James Thomas, who was not signatory to the loan modification, but had come on title by deed, see Exhibit D. The "new principal balance of the loan was stated in the Modification as $1,651,645.97

(13).   On or around April 12th, 2012, Chase entered into a 291 page consent judgment (herein the "Consent Judgment") with the Department of Justice related to certain loan origination and marketing practices, wherein it agreed to provide $3,675,400,000 worth of relief to consumer borrowers; attached hereto are pages 1-7 of that consent judgment, and Exhibit D of the same consent judgment, which in relevant part set forth the relief available to borrowers, See Exhibit E.

(14).   On or around December 1st, 2012, the Plaintiffs received Exhibit F from the Defendant Chase, a letter stating "We are canceling the remaining amount you owe Chase!" on Chase letterhead, and further explaining that, "…this means you will owe nothing more on the loan and your debt will be canceled, you don't need to sign or return anything for this to happen. The amount stated as cancelled was $1,651,645.97.

(15).   The Thomases, who had made three regular payments described in the Modification, stopped paying the modified amounts, as the letter urged.

(16).   On or around November 19th, 2013, Chase entered into a settlement agreement with the Department of Justice related to certain loan origination and marketing practices, wherein it agreed to forgive $4,000,000,000 (four billion) dollars worth of consumer debt, see Exhibit, G, P. 5 § 2 (herein the "Settlement Agreement").

(17).   The type of consumer debt to be forgiven was set forth in an "Annex 2" to the agreement, and recited that Chase would receive a dollar for dollar credit against the amount to be forgiven based on each dollar forgiven consumer borrowers on first or second lien mortgages, see Exhibit H.

(18).   On or around June 28th, 2014, Plaintiff Marshall Thomas received a 1099-C from Chase in the

amount of $1,651,645.97, a true and accurate copy of which is attached hereto as Exhibit I.

(19).    On or around May 29th, 2014, Chase discharged a second mortgage encumbering the Property, see Exhibit J.

(20).    On or around May 23rd, 2014, Evelyn Thomas received a letter from Chase that it was, "canceling [her] remaining mortgage debt, which it valued at $567,405.80, a true and accurate copy of the letter is attached hereto as Exhibit K.

(21).    On or around September 11th, 2014 – unbenknownst to the Thomases, Chase transferred the mortgage (although not the Note) to SPS, see Exhibit L.

(22).    On or around October 20th, 2016, SPS transferred the mortgage (although not the note) to DBNT, see Exhibit M.

(23).    The Thomases were generally aware of the Consent Judgment and the Settlement Agreement, and, relying on Chases' letter of December 1st, 2012, and the 1099Cs they subsequently received, believed their loans were canceled.

(24).    The Thomases stopped paying their modified loan in reliance on the December 1st, 2012 letter they received.

(25).    However, in late September of 2014, shortly before it came time to file their taxes, which they expected to be high, based on the 1099Cs they received, they received notifications from SPS that it was attempting to collect on their loan.

(26).    The Thomases repeatedly attempted to contact SPS, and got nowhere.

(27).    In 2015, the Thomases contacted a family friend, and attorney, Peter Samaan, who requested proof that SPS held the debt, and that SPS provide more information to him about the debt.

(28).    When SPS did not respond to his repeated telephone calls requesting more information, Mr. Samaan sent a letter on January 18th, 2016 requesting that SPS communicate with him about the Thomases' loan, and that they cease communications with the Thomases, see Exhibit N.

(29).   SPS did not respond to Mr. Samaan's letter.

(30).   On May 6th, 2016, Mr. Samaan emailed SPS, again requesting information, see Exhibit O.

(31).   At some point in late 2016, the Thomases received a letter from Orlans Moran, PLLC, the foreclosure law firm, which they forwarded to Mr. Samaan, who called Matthew Dickey at Orlans Moran, and to whom he forwarded his email of May 6th, 2016, see Exhibit O.

(32).   Mr. Dickey responded that he was working with SPS to "get more information," see Exhibit O.

(33).   Mr. Samaan requested an update from Mr. Dickey in November of 2016, and received a response from Mr. Dickey that the, "file is currently on hold per instruction from the client. I do not have any information other than that," See Exhibit O.

(34).   In response to a similar request for an update, on or around April 25th, 2017, Mr. Dickey responded that, SPS "confirmed with Chase that the mortgage was not forgiven and dispute the borrowers' contention that is was such," See Exhibit O

(35).   On or around May 22nd, 2017, SPS filed an "Affidavit Pursuant to M.G.L. 244 Sections 35B and 35C, which, on information and belief, is typically a first step in the initiation of foreclosure proceedings, a copy of which is attached hereto as Exhibit P.

(36).   Because of the 1099Cs which issued in June of 2014, and because of SPS' later efforts to collect the loan that the Thomases believed had been discharged in 2012, the Thomases never felt like they could pay their taxes, because they could not manage both the tax liability, and the mortgage payments.

(37).   On information and belief, the taxes on forgiven debt in the amount of $567,405.80, amount to approximately, $224,692.70.

(38).   On information and belief, the taxes on forgiven debt in the amount of $1,651,645.97, amount to approximately, $654,051.80.

(39).   The Thomases will only be able to pay those taxes if they can refinance the Property, or if their son can refinance the Property, and they can use the proceeds of the refinance to pay off the I.R.S.

(40).   The Property is deeply underwater, and is valued at approximately $1.3 Million dollars.

(41).   The Thomases attempted to contact SPS on numerous occasions to resolve the issues with the 1099-C, independently of their attorney, without hearing anything about the 1099-Cs (thus preventing them from filing their taxes) and/or refinancing the Property to pay their taxes.

## CLAIMS

### Count I – Declaratory Judgment (DBNT, CHASE, SPS)

(42).   The Plaintiffs re-state and re-allege paragraphs 1-41 as if separately set forth herein.

(43).   This Court has the authority to declare the rights of the Parties herein pursuant to 28 U.S.C. § 2201(a).

(44).   A controversy has arisen as between the Parties as to whether or not the December 1st, 2012 letter to Evelyn and Marshall discharged their mortgage, and canceled their debt.

(45).   A controversy has arisen as between the Parties as to whether or not the 1099-Cs sent by the Defendant Chase to the Plaintiffs discharged their mortgage obligation, and canceled their debt, because SPS, on behalf of DBNT, by and through its attorneys at Orlans Moran, PLLC, has alleged that the Thomases loan has not been canceled, and they believe it has been canceled.

(46).   Pleading in the alternative, a controversy has arisen as between the Parties as to whether the December 1st, 2012 letter to the Plaintiffs, and the 1099-C cancellation of debt notices sent to them in 2014 entitles them, in equity, to go back to where they were on the loan modification they had agreed upon with Chase, and which Chase caused to be recorded at the registry of deeds (three payments in); SPS, on behalf of DBNT, has filed an affidavit which, on information and belief, is usually precatory to a foreclosure.

(47).   A controversy has arisen as between the Parties as to whether the Defendant DBNT has the right to foreclose under the Power of Sale, or otherwise, where the debt had previously been canceled.

Count II – Promissory Estoppel (DBNT, CHASE, SPS)

(48).   The Plaintiffs re-state and re-allege paragraphs 1-47 as if separately set forth herein.

(49).   The Thomases were induced to stop paying their mortgage by the cancellation notice they received from Chase on December 1st, 2012.

(50).   Because Chase actually did enter into the consent judgment at that time, the Thomases' reliance was reasonable.

(51).   The Thomases have suffered a detriment as a result of their reliance, in the form of additional fees and costs, if the mortgage is not deemed canceled, and tax liability, if it is canceled.

(52).   Furthermore, Chase actually received a benefit from the cancellation of the Thomases' mortgage in that the cancellation allowed Chase to meet its obligations to the Justice Department.

(53).   In any case, the Thomases have been damaged by Chases' conduct, and the only equitable resolution of those damages is the actual cancellation of the mortgage which DBNT, a successor in interest to Chase, claims to hold by assignment, together with a discharge of that mortgage

Count III – Violation of the Fair Debt Collection Practices Act (SPS)

(54).   The Plaintiffs re-state and re-allege paragraphs 1-53 as if separately set forth herein.

(55).   Assuming that this Court finds that the Loan had been canceled by Chase, SPS, acting as a debt collector on behalf of DBNT (not as the holder of the loan) did not have the right to "to take any nonjudicial action to effect dispossession or disablement of property," because "there is no present right to possession of the property claimed as collateral through an enforceable security interest," which amounts to a violation of 15 U.S.C. § 1692(f)(6)(a), and the Plaintiffs have been damaged thereby.

Count IV – Negligent Misrepresentation (Chase)

(56).   The Plaintiffs re-state and re-allege paragraphs 1-55 as if separately set forth herein.

(57).   Pleading in the alternative, assuming this Court decides that the Property is encumbered by the Mortgage (which the Plaintiffs dispute) the Plaintiffs became aware that the Defendant Chase spoke

dishonestly when it issued the December 1st, 2012, and the 2014 1099-Cs, in late 2014, when it transferred the Property to SPS.

(58). The Plaintiffs relied upon the representation, and incurred late fees, and tax penalties as a consequence, all to their damage.

(59). The Plaintiffs' reliance was reasonable in light of the Consent Judgment and the Settlement Agreement.

### Count IV – Violation of G.L.c. 93A §§ 2, 9 (Chase, DBNT, SPS)

(57). The Plaintiffs re-state and re-allege paragraphs 1-56 as if separately set forth herein.

(58). The Thomases are consumers within the meaning of the consumer protection act.

(59). DBNT, SPS, and Chase are all engaged in the trade or commerce of mortgage lending.

(60). Neither DBNT, SPS or Chase have a place of business in Massachusetts, and G.L.c. 93A § 9(3) provision clearly excuses the plaintiff from serving a demand letter if the prospective respondent either lacks a place of business in Massachusetts or does not keep assets in Massachusetts.

(61). Continuing foreclosure proceedings on a canceled mortgage is a deceptive practice.

(62). Failing to readily respond to a borrowers' legitimate requests for information about their loan constitute an unfair and deceptive practice.

(63). Recording affidavits against title that indicate a loan encumbers the Property, when in fact that loan has been canceled is an unfair and deceptive practice.

(64). If, as on information and belief, it did, Chase indicated to the Government that it was in compliance with the Settlement Agreement and the Consent Judgment, based on the 1099-C documents it issued to the Thomases, when it later assigned the mortgage to SPS, it acted deceptively, because the Thomases were used as pawns in Chase's litigation with the government, to their damage.

(65). If, as on information and belief, it did, Chase indicated to the Government that the discharge of the Mortgage in 2014 was a part of meeting its obligations under the Consent Judgment, when it had

already canceled the Thomases' debt obligation pursuant to the Settlement Agreement, it acted deceptively, because the Thomases were used as pawns in Chase's litigation with the government, to their damage.

WHEREFORE, the Plaintiffs Marshall and Evelyn Thomas pray this Honorable Court:

(1).    DECLARE that any obligation to pay the Mortgage associated with Exhibit A has been CANCELED, pursuant to the December 1st, 2012 letter.
(2).    DECLARE that the Defendant DBNT must issue a discharge within 30 days of a final court order requiring it to do so.
(3).    Enter Judgment for the Plaintiffs against SPS on their FDCPA claim.
(4).    Enter Judgment for the Plaintiffs on their G.L.c. 93A claim, and enter an Order, requiring the Defendants to pay the Plaintiffs their costs and attorneys' fees associated with this litigation.

Respectfully Submitted,
Marshall and Evelyn Thomas
By their attorney,

June 20th, 2017

/S/ Jonas A. Jacobson
Jonas A. Jacobson (BBO #676581)
872 Massachusetts Ave., Unit 1-6
Cambridge, MA 02139
617.230.2779
jonas@jonasjacobson.com

## VERIFICATION OF COMPLAINT

I, Marshall Thomas, based on personal knowledge, except where stated under information and belief, hereby swear under the pains and penalties of perjury that I have read the foregoing and it is a true and accurate account to the best of my belief.

Dated: 6/13/17      *Marshall Thomas*

I, Evelyn Thomas, based on personal knowledge, except where stated under information and belief, hereby swear under the pains and penalties of perjury that I have read the foregoing and it is a true and accurate account to the best of my belief.

Dated: 6/13/17      *Evelyn Thomas*